## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CARRINGTON KEYS,

      Plaintiff,

CIVIL ACTION NO. 3:10-CV-1570

(JUDGE CAPUTO)

JACQUELINE CARROLL, et al.,

      Defendants.

### MEMORANDUM

Presently before the Court is Plaintiff's Motion for Reconsideration (Doc. 123) of the Court's November 23, 2011 Order denying Plaintiff's Motions to Supplement his Complaint.[1] In the alternative, Plaintiff petitions for permission to file an interlocutory appeal.  For the reasons below, the Motion will be denied and no interlocutory appeal will be granted.

### I.  Background

Plaintiff Carrington Keys is currently incarcerated at State Correctional Institution ("SCI") Camp Hill.  Previously, while incarcerated at SCI Dallas, Keys lodged criminal complaints with the Luzerne County District Attorney's Office that he asserts were not

---

[1]Although my November 23, 2011 Order denied two separate motions to supplement, I construe Plaintiff's instant Motion to pertain only to his May 24, 2011 Motion. While Keys "objects to Judge Caputos [sic] Memorandum/Order as it relates to Document 62 in that said Order is based upon a misrepresentation of material facts," the Court believes this averment was in error, especially in light of Plaintiff's later statement that he "specifically objects to Judge Caputos [sic] order as it relates to denying Document 34, and the grounds upon which denial is based, and Plaintiff does not contest denial of other motions mentioned therein."  (Mot. At 4, Doc. 123).  Therefore, I find that Keys does not seek reconsideration of my Order insofar as it relates to his August 4, 2011 Motion to Supplement (Doc. 62).

investigated.  In particular, Keys alleges that he forwarded information to District Attorney Jacqueline M. Carroll alleging involvement of the Correctional Defendants in the suicide of a fellow inmate, but that instead of investigating and/or prosecuting the Correctional Defendants, Defendant Carroll turned Plaintiff's complaint over to prison officials who then retaliated against Plaintiff through assault, harassment, and deprivation of mail.

Keys filed his initial Complaint in the Luzerne County Court of Common Pleas against various prison officials pursuant to 42 U.S.C. § 1983, alleging, *inter alia*, assault, mail tampering, retaliation, and failure to prosecute.  The Defendants removed the action to federal court. (Doc. 1). Defendants to this lawsuit include: Jeffrey A. Beard, Secretary of the Department of Corrections; Michael Klopotoski, the Regional Deputy Secretary for the Department of Corrections; SCI Dallas Superintendent Jerome Walsh; SCI Dallas Deputy Superintendent Vincent Mooney; Joseph Zakkarauskas, Robert McCoy, Lawrence Pudlosky, Elmore Angelope and Nancy Fedor, all employees at SCI Dallas ("Correctional Defendants"); and Jacqueline Musto Carroll, the former District Attorney for Luzerne County.

As a result of his complaints to the District Attorney's Office, Plaintiff claims he was subjected to verbal and physical harassment from Corrections Officers ("CO") Pudlosky and McCoy who manufactured false misconduct reports to conceal their abuse.  Plaintiff's claim against Defendant Carroll is that she had an unconstitutional policy of sending prisoner criminal complaints back to their respective institutions in order to endanger the inmates who authored them and to make them disappear.  Plaintiff argues that this indifference to his federal rights amounted to a state created danger, and that Defendant Carroll had constructive knowledge of the culture of lawlessness her actions were promoting within the prisons.  Plaintiff further alleges that Defendants Beard, Klopotoski, Walsh, Mooney, and

2

Zakkarauskas were deliberately indifferent in training their Officers as to constitutional policies, and that they affirmatively established policies and practices that encouraged interference with prisoners' right to petition for redress of grievances.

Pursuant to the Court's November 23, 2011 Order, Plaintiff filed an Amended Complaint (Doc. 125) on December 6, 2011.  In his Amended Complaint, Plaintiff argues Defendant's actions were in violation of his rights to: (1) be secure in his person and property under the Fourth, Eighth, and Fourteenth Amendments; (2) to petition for redress of grievances under the First Amendment; (3) to be free of cruel and unusual punishment under the Eighth Amendment; (4) equal protection under the First and Fourteenth Amendments; and (5) substantive due process under the Fourteenth Amendment.  Keys also claims assault and battery under state law and that Defendant Carroll's actions amounted to a state created danger under the Fourteenth Amendment's Due Process Clause.  Plaintiff seeks a permanent inunction and monetary damages as against all Defendants.

Plaintiff's Motion seeks Reconsideration of my November 23, 2011 Order (Doc. 119) denying two of Plaintiff's Motions to Supplement (Docs. 34 and 62).  Plaintiff Keys's Motion was accompanied by a brief in support and Defendant Carroll filed a brief in opposition (Doc. 134).[2]  This Motion is now ripe for the Court's consideration.

---

[2]Plaintiff moved to strike Defendant Carroll's brief in a separate motion (Doc. 143) for untimeliness.  However, in a separate Order, I have denied Plaintiff's Motion to Strike. (Doc. 161).

## II. Discussion

**A.    Legal Standard**

### 1.    Motion to Supplement

Plaintiff Carrington Keys contests my November 23, 2011 Order denying his Motion to Supplement his Complaint.  Under Federal Rules of Civil Procedure Rule 15(d), "upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." In referring to events that occurred after the original pleading was filed, a supplemental pleading differs from an amendment, which covers matters that occurred before the filing of the original pleading but were overlooked at the time.  *Owens-Illinois, Inc. v. Lake Shore Land Co., Inc.*, 610 F.2d 1185, 1188 (3d Cir. 1979).

A motion to supplement is governed by essentially the same standards as a motion to amend a complaint.  *Holmes v. Bledsoe*, No. 4:cv-10-1043, 2011 WL 292851 at *6 (M.D. Pa. Jan. 26, 2011).  Such a pleading is left "to the sound discretion of the trial court and should be freely granted when doing so will promote the justiciable disposition of the case, will not cause undue prejudice or delay or trial inconvenience and will not prejudice the rights of any parties to the action." *Bates v. Western Elec.*, 420 F. Supp. 521, 525 (E.D. Pa. 1976) (citing Wright and Miller, *Federal Practice and Procedure*: Civil § 1504 at 542-43).  Unless the court finds "undue delay, bad faith or dilatory motive on the part of the movant or undue prejudice to the opposing party an appropriate exercise of a court's discretion should result in affording a plaintiff the opportunity to test its claim on the merits." *Medeva Pharma LTD. v. American Home Prod.,* No. 00-396, 2001 U.S. Dist. LEXIS 14305, at *5 (citation omitted).

4

**2.      Motion for Reconsideration**

A motion for reconsideration is governed by Rule 59(e) of the Federal Rules of Civil Procedure, which allows a party to move to alter or amend a judgment within twenty-eight (28) days of entry.  Fed. R. Civ. P. 59(e).  "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985) (citation omitted).  A judgment may be altered or amended if the party seeking reconsideration establishes at least one of the following grounds: "(1) an intervening change in controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café, by Lou Ann, Inc., v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). "A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002). "[R]econsideration motions may not be used to raise new arguments or present evidence that could have been raised prior to the entry of judgment." *Hill v. Tammac Corp.*, No. 05 1148, 2006 WL 529044, at *2 (M.D. Pa. Mar. 3, 2006).  Lastly, the reconsideration of a judgment is an extraordinary remedy, and such motions should be granted sparingly. *D'Angio v. Borough of Nescopeck*, 56 F. Supp. 2d 502, 504 (M.D. Pa.1999).

**B.      Alleged Errors in the Court's November 23, 2011 Memorandum and Order**

In my November 23, 2011 Memorandum and Order, I denied Keys's Motion to Supplement his Complaint as to Defendant District Attorney Jacqueline M. Carroll.  (Doc. 119).  Plaintiff's proposed Supplemental Complaint argued that Defendant Carroll retaliated

against him by initiating false criminal charges for riot in response to his filing the instant suit in state court in June of 2010. As such, Keys's Supplemental Complaint sought declaratory judgment against Defendant Carroll as well as injunctions against the criminal charges. I denied this Motion to Supplement, finding that while Keys's civil Complaint was filed on June 14, 2010, the facts before the Court indicated that the criminal charges against Keys stemmed from an April 29, 2010 incident, for which Keys, among others, was charged with aggravated harassment and riot. I further concluded that even if Defendant Carroll had acted in bad faith in failing to recuse herself from Keys's prosecution, that she would be otherwise entitled to prosecutorial immunity.

First, in his instant Motion for Reconsideration, Keys argues that I "adopt[ed] the District Attorneys [sic] argument that Plaintiff only filed his complaint (supplemental complaint) after his Motion to Recuse DA [sic] was denied." (Mot. at ¶ 4, Doc. 123). Keys adds that this is "based on untrue allegations" since his Motion to Supplement was not denied until October of 2010. (*Id.* at ¶ 5). From the face of Keys's own Motion, it is clear that his Motion to File a Supplemental Complaint was filed more than six months after his Motion to Recuse Defendant Carroll was denied. Moreover, in denying Keys's Motion to Supplement, I never adopted this facet of Defendant Carroll's argument. While I agreed with Defendant Carroll insofar as the order of events could not substantiate a claim of retaliation, I did not hold that Keys's Motion was a mere attempt to renew his Motion to Recuse.

Secondly, Keys objects to my determination that Plaintiff was charged with riot on April 29, 2010. Keys argues that he "was only charged through the mail August 2010 [sic], long after his June 14th 2010 [filing]." (*Id.* at ¶ 9). Plaintiff is correct to note that there is no evidence in the record that he was actually charged with riot on April 29, 2010, the date of

6

the actual events leading to the eventual charge. Instead, the record indicates that State Trooper Christopher J. Wilson filed a Police Criminal Complaint against Keys on July 7, 2010. (Def.'s Ex. A to Doc. 134).  While these charges were initiated after the filing of Plaintiff's instant lawsuit, they were made before any Defendant in the instant action was served,[3] and they were not made through the District Attorney's Office. Yet, in his proposed Supplemental Complaint, Plaintiff avers that his lawsuit was publicized in the *Wilkes-Barre Times Leader* newspaper. From this, it was in error for me to determine that the order of events set out in the proposed supplemental complaint necessarily precluded an inference of retaliation.

However, my ultimate determination that Keys's Motion for a Supplemental Complaint as to Defendant  Carroll would be futile and should not be granted will not be disturbed. This is because I also found that Defendant Carroll was entitled to absolute immunity, a determination that Keys also contests in his Motion for Reconsideration. Specifically, in his Motion, Keys argues that Carroll should not be afforded *qualified* immunity without a fully developed record, and that issues of credibility should be submitted to a jury. (Mot. at 2, Doc. 123).

My determination that absolute prosecutorial immunity applies to the claims in the proposed Supplemental Complaint was not in clear error. Absolute prosecutorial immunity extends with "full force" to all prosecutorial activity "intimately associated with the judicial phase of the criminal process." *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). In fact, *Imbler* explicitly determined

---

[3]Defendant Carroll was the first to be served in this action, on July 13, 2010 (Notice of Removal, Doc. 1).

that the initiation of a prosecution was exactly within the judicial phase entitled to immunity. 424 U.S. at 431.  This immunity exists "even where [a prosecutor] acts without a good faith belief that any wrongdoing has occurred," *Kulwicki v. Dawson*, 969 F.2d 1454, 1464 (3d Cir. 1992), and it is well-established that prosecutorial immunity "is not defeated by allegations that the prosecutor acted in bad faith." *Tindell v. Pennsylvania*, 398 Fed. Appx. 696, 698 (3d Cir. 2010) (citing *Ernst v. Child & Youth Servs.*, 108 F.3d 486, 502 (3d Cir. 1997)).

In his proposed Supplemental Complaint of May 24, 2011, Keys alleges that Defendant Carroll retaliated against him by "ratifying, condoning, cosigning or causing to be set in Motion false criminal charges against the Plaintiff," and that her "actions were motivated to discriminate/retaliate against Plaintiff and deprive Plaintiff of federally protected rights." (Proposed Supplemental Complaint at ¶¶ 4-5, Doc. 34).  As Keys contests the very initiation of the lawsuit against him, the heart of prosecutorial immunity, it was not in error to determine that his proposed claim was untenable, even though Keys alleges that Defendant Carroll's charges against him are baseless.   *See e.g. Stromas v. Florida*, No. 3:11cv31/RV/EMT, 2011 WL 971628 at *3 (N.D. Fla. Mar. 16, 2011) (finding allegations of false charges by an Assistant State Attorney were exactly within the Supreme Court's doctrine of prosecutorial immunity).   This grant of immunity is absolute, and courts acknowledge that the prosecutor's motives are irrelevant in this calculus. *See Hudak v. Foulk*, No. 1:06-cv-110-SJM, 2007 WL 4287760 at *16 (W.D. Pa. Dec. 05, 2007) (collecting cases).  Thus, absolute prosecutorial immunity applies, and discovery as to Defendant Carroll's motives for the purpose of qualified immunity is not warranted.[4]

---

[4]As the Court determines that absolute prosecutorial immunity applies to Defendant Carroll, to the extent Keys cites cases supporting his argument as to qualified immunity,

Finally, as I noted in a brief footnote in my November 23, 2011 Memorandum, Plaintiff's proposed Supplemental Complaint is also barred by the doctrine of abstention.[5] In a very similar action, brought by another individual who participated in the exact same April 29, 2010 incident at SCI Dallas, I determined that *Younger* abstention rendered it inappropriate for me to enjoin his prosecution by the District Attorney's Office.  *Stanley v. Luzerne County Dist. Attorney's Office*, Civ. Act. No. 3:11-cv-1699, 2011 WL 5520403 at *2 (M.D. Pa. Nov. 14, 2011) (Caputo, J.).  In particular, and highly analogous to the instant matter, that plaintiff sought to enjoin the Luzerne County District Attorney's Office from prosecuting him for the alleged riot as he claimed that the charges were based on falsified reports and concealment of evidence.  *Id.* at *1.  I held that enjoining that action would contravene *Younger v. Harris*, where the Supreme Court reversed an injunction against a state criminal prosecution, recognizing a "national policy forbidding federal courts to stay or enjoin state court proceedings except under special circumstances." 401 U.S. 37, 41 (1971). This policy, now referred to as *Younger* abstention, "is a legal doctrine granting federal courts discretion to abstain from exercising jurisdiction over a claim when resolution of that claim would interfere with an ongoing state proceeding."  *Kendall v. Russell*, 572 F.3d 126, 130 n.3 (3d Cir. 2009).

The Third Circuit has held a federal court may invoke the *Younger* abstention doctrine and decline to enjoin a state proceeding where "(1) there are ongoing state proceedings that

------

they are inapposite.

[5]In that Memorandum, I specifically noted that Keys's claim was likely barred by the *Rooker-Feldman* Doctrine of abstention.  However, abstention is more appropriately analyzed here under the related doctrine of *Younger* abstention.

9

are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." *Miller v. Mitchell*, 598 F.3d 139, 146 (3d Cir. 2010) (quoting *Kendall*, 572 F.3d at 131). In *Stanley*, as here, there is an ongoing state judicial proceeding that implicates important state interests in prosecuting allegedly violent acts within a correctional facility. To the extent Keys's proposed Supplemental Complaint seeks a permanent injunction enjoining the allegedly false charges, I find that this prayer for relief would cause undue and unnecessary medaling with the workings of the Commonwealth Courts. Moreover, the state proceeding affords Keys an adequate opportunity to raise these constitutional defenses along with his assertion that Defendant Carroll should recuse herself pursuant to 71 P.S. § 732-205.[6] Therefore, I conclude that *Younger* abstention would be appropriate to Plaintiff's proposed Supplemental Complaint.

However, Keys argues, as in *Stanley*, that his case falls under the *Younger* exception for bad faith prosecution, citing to *Dombrowski v. Pfister*, 380 U.S. 479 (1965). In *Dombrowski*, the Supreme Court granted a preliminary injunction preventing the state from prosecuting the plaintiffs under a subversive activities law. *Id.* at 482. The plaintiffs showed that the state had repeatedly arrested them for harassment purposes, without "any

---

[6]This provision of the Commonwealth Attorneys Act provides that the "Attorney General shall have the power to prosecute in any county criminal court . . . [u]pon the request of a district attorney who lacks the resources to conduct an adequate investigation or the prosecution of the criminal case or matter or who represents that there is the potential for an actual or apparent conflict of interest on the part of the district attorney or his office." 71 P.S. § 732-205(a)(3). However, this may no longer be applicable as Defendant Carroll is no longer the District Attorney of Luzerne County and has been replaced by District Attorney Stefanie Salavantis.

expectation of securing valid convictions," and that each time the charges were later dismissed. *Id.* at 482, 488–89. Addressing the *Dombrowski* decision six years later, the *Younger* Court emphasized that enjoining state criminal prosecutions is appropriate only in "extraordinary circumstances," 401 U.S. at 53, and distinguished *Younger* from *Dombrowski* based on the "series of repeated prosecutions" in *Dombrowski*, *id.* at 49. On the same day as *Younger*, the Supreme Court reiterated this limited exception, stating that the bad faith safety valve applies "[o]nly in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate." *Perez v. Ledesma*, 401 U.S. 82, 85 (1971). In fact, the Supreme Court has yet to determine that any case falls into the *Dombrowski* exception based on bad faith prosecution. *Tindall v. Wayne Cnty. Friend of Court*, 269 F.3d 533, 539 (6th Cir.2001); *see also* Erwin Chemerinsky, *Federal Jurisdiction* 860 (5th ed.2007) (noting that "the bad faith prosecutions exception appears limited to facts such as those present in *Dombrowski*" and that "commentators label the cases fitting in this exception as constituting an 'empty universe'").

Here, the *Dombrowski* exception similarly does not apply. Consistent with my determination in *Stanley*, there are no facts here suggesting that this extremely narrow exception for bad faith prosecutions applies. Keys does not argue in his Supplemental Complaint that Defendant Carroll only seeks to harass him through repeatedly bringing lawsuits that will never be culminated. In fact, it is notable that Defendant Carroll is no longer the District Attorney for Luzerne County. Moreover, unlike the activists in *Dombrowski*, who faced repeated charges and dismissal such that they could not actually assert their

11

constitutional claims in court, Keys will have the opportunity to assert his defenses at trial and present evidence of the alleged retaliation and malicious prosecution.  Therefore, the *Younger* exception for bad faith prosecution is not applicable in this case.

For the reasons above,[7] I find that I did not commit clear error in concluding that Keys's proposed Supplemental Complaint was not predicated on a viable claim and exercising my sound discretion to deny his Motion to Supplement.

## C.  Permission to File Interlocutory Appeal

Plaintiff additionally seeks permission to file an interlocutory appeal as to my determination that his supplemental complaint was not warranted.  Federal courts of appeals only have jurisdiction over appeals from "final decisions" of federal district courts.  28 U.S.C. § 1291.  "Ordinarily, an order which terminates fewer than all claims, or claims against fewer than all parties, does not constitute a 'final' order for purposes of appeal under 28 U.S.C. § 1291."  *Carter v. City of Phila.*, 181 F.3d 339, 343 (3d Cir. 1999).  As such, my denial of Plaintiff's Motion is not a final order for purposes of appeal.

Plaintiff does not elaborate on his claim for interlocutory appeal or cite any authority supporting his Petition.  However, one method for interlocutory appeal, pursuant to Federal Rule of Civil Procedure Rule 54 ("Judgment on Multiple Claims or Involving Multiple Parties") provides that:

When an action presents more than one claim for relief—whether as a claim,

---

[7]It has been raised in response to Plaintiff's Motion to Reconsider that the proposed supplemental claim against Defendant Carroll appears also to be barred by the doctrine of *res judicata*.  Plaintiff Keys raised this exact claim before Judge Nealon, who affirmed Magistrate Judge Blewitt's Report and Recommendation rejecting the claim on prosecutorial immunity grounds in February of 2011.  *Keys v. Commonwealth of PA et al.*, Civ. Act. No. 3:10-cv-2487, 2011 WL 766950 (M.D. Pa. Feb. 25, 2011).

counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).  In order for Rule 54(b) to apply, a district court must find that "(1) there has been a final judgment on the merits, i.e. an ultimate disposition on a cognizable claim for relief; and (2) there is 'no just reason for delay.'" *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 202 (3d Cir. 2006) (citing *Allis-Chambers Corp. v. Phila. Elec. Co.*, 521 F.2d 360, 363 (3d Cir. 1975), *overruled on other grounds by Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 6 (1980)). When determining whether there is a "just reason for delay," a court must balance "considerations of judicial administrative interests (preservation of the federal policy against piecemeal appeals) and equities (justice to the litigants)." *Carter*, 181 F.3d at 346 (citing *Curtiss-Wright*, 446 U.S. at 8).

I find that Rule 54(b) is inapplicable as Plaintiff's Motion to File a Supplemental Complaint is not a "claim, counterclaim, crossclaim, or third-party claim" as required for final judgment.  Moreover, as the moving party bears the burden of demonstrating that a case is appropriate for certification under Rule 54(b), *Anthuis v. Colt. Indus. Operating Corp.*, 971 F.2d 999, 1003 (3d Cir. 1992), and since Keys has made no argument that this presents a situation for the application of Rule 54,he has not met his burden.

A second avenue of interlocutory appeal is pursuant to 28 U.S.C. § 1292(b).  Under Section 1292, a court may certify a non-final order for interlocutory appeal if (1) the order "involves a controlling question of law;" (2) "a substantial ground for difference of opinion"

13

exists with regard to the issue involved; and (3) an immediate appeal "may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b); *Simon v. United States*, 341 F.3d 193, 199 (3d Cir.2003).  The certification decision rests with the discretion of the district court, and the court may decline to certify an order even if the parties have satisfied all elements enumerated in the statute. *Knipe v. SmithKline Beecham*, 583 F.Supp.2d 553, 599 (E.D. Pa. 2008).  As above, the burden to show that such certification is approrpriate lies with the moving party.  *Orson, Inc. v. Miramax Film Corp.*, 867 F. Supp. 319, 320 (E.D. Pa. 1994) (citing *Rottmund v. Continental Assurance Co.*, 813 F. Supp. 1104, 1112 (E.D. Pa. 1992)).

Keys has made no showing that Section 1292's considerations apply to his Motion to Supplement.  Notably, I cannot find that granting this certificate would materially advance the litigation.  Such advancement considers: "1) whether the need for trial would be eliminated, 2) whether trial would be simplified by the elimination of complex issues, and 3) whether discovery could be conducted more expeditiously and less expensively."  *Eisenberger v. Chesapeake Appalachia, LLC*, No. 3:09-CV-1415, 2010 WL 1816646 at *4 (M.D. Pa. May 05, 2010) (Caputo, J.) (citing *Knipe v. SmithKline Beecham*, 583 F.Supp.2d 553, 600 (E.D. Pa. 2008)).  None of these factors would be furthered by certifying this appeal.  Moreover, it is my determination that certifying an appeal as to a claim not at issue in the litigation could only frustrate the ultimate termination of the litigation.  Therefore, I will similarly decline to exercise my discretion to certify this matter pursuant to Section 1292.

**Conclusion**

For the reasons stated above, Plaintiff's Motion for Reconsideration (Doc. 123) will

be denied and no interlocutory appeal will be granted.  An appropriate order follows.


 February 22, 2012                                         /s/ A. Richard Caputo
Date                                                      A. Richard Caputo
                                                         United States District Judge

15