# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARRINGTON KEYS, | CIVIL ACTION NO. 3:10-CV-1570 |
| Plaintiff, | (JUDGE CAPUTO) |
| JACQUELINE CARROLL, et al., | |
| Defendants. | |

## **MEMORANDUM**

Presently before the Court are numerous discovery motions in this matter. Following clarification and argument at a February 21, 2012 status conference, the Court now addresses these pending discovery motions below.

**I. Plaintiff's Motions to Compel**

Plaintiff Carrington Keys has four pending Motions to Compel Discovery in this case. (Docs. 41, 59, 100 and 127). Taken together, these Motions currently seek: (1) all grievances filed against the Correctional Defendants, the action taken, responses, etc. from the years 2008 to 2010; (2) all grievances filed in the Restricted Housing Unit ("RHU") at State Correctional Institution ("SCI") Dallas from years 2009 to the present; (3) the disciplinary records of each Correctional Defendant between 2007 and 2010; (4) a signed copy of each Correctional Defendant's code of ethics; (5) any and all abuse reports, letters, and complaints filed against the Correctional Defendants from years 2007 to 2010; (6) the incident log from the SCI Dallas RHU for year 2009 to present; (7) the criminal and arrest records of each Corrections Defendant; (8) the KA and KB legal logbooks for January 2009

until Plaintiff's release from the RHU at SCI Dallas; (9) any and all request slips and grievances regarding problems with mail delivery (legal or otherwise), and tampering with mail at SCI Dallas from 2008 to April 29, 2010; (10) the KA and KB block visitor logbooks from June 2009 until Plaintiff's release from the RHU at SCI Dallas; and (11) the RHU property log for SCI Dallas and property inventory sheets (the DC-153 form) for Plaintiff Keys from April 29, 2010.

The Corrections Defendants argue that many of the above requests are overbroad, irrelevant, and not highly probative to the extent they seek mere allegations of misconduct. Further, the Corrections Defendants argue that Plaintiff Keys does not have standing to assert the complaints of every inmate housed at SCI Dallas. Keys retorts that his requests go to the unconstitutional policies and practices at SCI Dallas, specifically that inmates were consistently attacked as a result of filing complaints and that the supervisory Defendants were aware of this practice and acquiesced.

In support of this approach, Keys cites *Beck v. City of Pittsburgh*. 89 F.3d 966 (3d Cir. 1996). There, a plaintiff sued a police officer and his employer, the City of Pittsburgh, for excessive force utilized in the course of an arrest. *Id.* at 967. However, in that case, the plaintiff's action against the municipality under 42 U.S.C. § 1983 was brought pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Under *Monell*, "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690; *Williams v. West Chester*, 891 F.2d 458, 467 (3d Cir. 1989). Conversely, under *Monell*, "a local government may not be sued under

2

§ 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell,* 436 U.S. at 694.

In *Beck*, while the plaintiff dropped his case against the individual officer, the judge found for the city in entering a judgment as a matter of law, determining that no reasonable jury could find that the City of Pittsburgh had an established policy of authorizing excessive force.  *Beck*, 89 F.3d 967.  The Third Circuit disagreed, holding that the plaintiff "had presented sufficient evidence from which a reasonable jury could have inferred that the City of Pittsburgh knew about and acquiesced in a custom tolerating the tacit use of excessive force by its police officers." *Id.* at 976.  Similarly, Keys cites *Fletcher v. O'Donnell*, which was also a lawsuit against a police officer and his employer, the City of Allentown.  867 F.2d 791 (3d Cir. 1989).  The plaintiff in that case attempted to establish a *Monell* claim against the City by providing examples of the officer's use of excessive force in previous situations and establishing that the City had been aware of those instances.  However, the trial court excluded this evidence and granted a directed verdict in favor of the City. *Id.* at 793-94.  The Third Circuit determined that this ruling was in error.  *Id.* at 794.

These cases seeking institutional liability are inapplicable to the matter *sub judice*.  Plaintiff is not asserting a *Monell* claim against a municipal body alleging an unconstitutional policy or practice under Section 1983 since such a claim in the instant matter would be precluded by sovereign immunity.  The doctrine of sovereign immunity, established by the

3

Eleventh Amendment[1], protects states from suits by citizens, and the Commonwealth of Pennsylvania has not waived this grant of immunity. *Lavia v. Pennsylvania*, 224 F.3d 190, 195-96 (3d Cir. 2000). While sovereign immunity "protects an unconsenting state or state agency from a suit brought in federal court . . . . [t]his immunity does not extend to individual state officers sued in their individual capacities for prospective injunctive or declaratory relief to remedy ongoing violations of federal law." *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009). However, while *Monell* found that sovereign immunity did not apply to municipalities under Section 1983, 436 U.S. at 690, such an action is not possible as against the Commonwealth of Pennsylvania's Department of Corrections ("DOC") or a State Correctional Institution. *Lavia*, 224 F.3d at 195 (finding, in the absence of Congressional abrogation, that as "the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth . . . it shares in the Commonwealth's Eleventh Amendment immunity."); *Wood v. Pennsylvania Bd. of Probation and Parole*, Civ. Act. No. 08-76J, 2009 WL 1913301 at *3 (W.D. Pa. July 02, 2009) (holding that claims against SCI Cresson were barred by the Eleventh Amendment); *Davis v. Pennsylvania Dept. of Corrections*, Civ. Act. No. 05-1558, 2006 WL 2927631 at *4 (W.D. Pa. Oct. 12, 2006) (concluding that "the Eleventh Amendment bars not only all federal law claims in federal court but all state law claims as well against DOC, SCI-Chester and the individual

---

[1] The Eleventh Amendment provides that: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

DOC Defendants in their official capacities.").

Thus, the authority Keys cites in support of the use of evidence of other acts of a consistent nature with those he alleges against himself are cases where those consistent acts go to the establishment of a policy or custom under *Monell*; not for the purpose of establishing the veracity of the alleged forms of unconstitutional conduct.  Therefore, the Court will grant Plaintiff Keys's requests insofar as they seek materials relevant to Keys's personal retaliation claims.  In addition to the fact that Plaintiff's claim is not against a state institutions for implementation for an unconstitutional policy or practice, but is a suit for unconstitutional acts performed on him, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).  With these tenets in mind, the Court will grant Plaintiff's requests as follows:

**(1)     All Grievances Filed Against the Correctional Defendants, the Action Taken, Responses, Etc. From the Years 2008 Through 2010.**

This request will be granted, but only to the extent such grievances pertain to Plaintiff Carrington Keys.

**(2)     All Grievances Filed in the Restricted Housing Unit at SCI Dallas From Years 2009 to the Present**

The request will be denied as it is overbroad and has little probative value to the claims at issue in this case.

**(3)     The Disciplinary Records of Each Correctional Defendant From 2007 Through 2010**

This request will be granted.

**(4)   A Signed Copy of Each Correctional Defendant's Code of Ethics**

This request will be granted.

**(5)   Any and All Abuse Reports, Letters, and Complaints Filed Against the Correctional Defendants From Years 2007 to 2010**

This request will be granted, but only to the extent it seeks abuse reports, letters, and complaints pertaining to Plaintiff Carrington Keys.

**(6)   The Incident Log From the SCI Dallas RHU**

This request will be granted, but only as to years 2009 and 2010.

**(7)   The Criminal and Arrest Records of Each Corrections Defendant**

This request will be granted insofar as it relates solely to criminal records, and solely for a period relating back ten (10) years.

**(8)   The KA and KB Legal Logbooks for January 2009 Until Plaintiff's Release From the RHU at SCI Dallas**

This request will be granted, but only to the extent it seeks legal logbooks pertaining to Plaintiff Carrington Keys.

**(9)   Any and All Request Slips and Grievances Regarding Problems With Mail Delivery (Legal or Otherwise), and Tampering With Mail at SCI Dallas From 2008 to April 29, 2010**

This request will be granted, but only to the extent it seeks request slips and grievances pertaining to Plaintiff Carrington Keys.

**(10)   The KA and KB Block Visitor Logbooks From June 2009 Until Plaintiff's Release From the RHU at SCI Dallas**

This request will be granted as to years 2009 and 2010.

**(11) The RHU Property Log For SCI Dallas and Property Inventory Sheets (the DC-153 Form) for Plaintiff Keys From April 29, 2010**

This request will be granted.

## II. Plaintiff's Motions to Compel

Plaintiff has filed a Motion to Compel Defendants Walsh, Mooney, Klopotoski and Zakarauskas to Answer Plaintiff's Request for Admissions and Interrogatories. (Doc. 71). According to Plaintiff, the four interrogatories at issue are:

1. Were you aware of any abuse, human rights violations by guards at SCI Dallas during your term as (Deputy Superintendent, Superintendent, Regional Deputy Secretary) at Dallas?

2. Were you aware of any prisoners [sic] complaint about abuse at SCI Dallas R.H.U. within the time frame of 2009 to present date?

3. If the answer to the above question is yes, did you take any action to curb the abuse?

4. Have you ever taken disciplinary action against any of your subordinates or recommended that such disciplinary action be taken? If so please produce any and writings related to disciplinary actions taken. The year, month, date and to whom it was taken against and the reason for such?

(Pl.'s Br. at ¶ 9, Doc. 72). Plaintiff's represents that his four contested requests for admissions sought are:

1. Do you admit or deny that you were aware of several complaints about abuse at SCI Dallas by Dallas RHU guards, your subordinates, or any of the defendants named herein during the years 2008-2010?

2. Do you admit or deny that you were aware of complaints about Defendants McCoy, Pudlowsky, Elmore or Angelovic being involved in assaults on inmates, depriving inmates of food, exercise, showers, or other forms of mistreatment during the years 2008-2010?

3. Do you admit or deny that you were aware that numerous prisoners in SCI Dallas RHU complained about being subject to retaliation as a

>  result of reporting the abuse of Dallas RHU guards in 2008-2010?
>
> 4. Were you made aware of any complaints about guards mistreating or abusing inmates or inmates property by any outside agency, organization, or government official, specifically Dallas RHU guards during the years of 2008-2010?  Admit or deny being aware of the subject matter in paragraph 4?

(*Id.* at ¶ 14).  As The Court finds these requests appropriate, the Corrections Defendants will be directed to respond to them to the extent they have not done so already.  Of course, in congruence with Part I of this Memorandum, to any extent these requests seek documentation, such documentation shall be limited to instances of abuse or disciplinary action concerning only the Plaintiff.

Plaintiff has also moved for sanctions against Defendant Fedor for failure to disclose. (Doc. 138).  Specifically, Plaintiff takes issue with Defendant Fedor's objections to two questions in his second set of interrogatories:

> 1. If [Plaintiff's] legal mail is not listed in the Unit logbook of April 2010, however was sent by Court to Dallas prison[,] who would be responsible for this mail not being forwarded to R.H.U.?
>
> 2. True of False[:] a litany of complaints was filed against you (Fedor) and the mailroom by prisoners for lost of [sic] legal mail, tampering or destruction of legal mail?

(Pl.'s Br. at 1-2, Doc. 139).  The Court similarly finds these interrogatories appropriate and will direct Defendant Fedor to respond to the extent she has not done so already.

### III. Other Outstanding Discovery Motions

Both parties have filed motions to extend the discovery deadlines (Docs. 95 and 96). The parties have been directed to submit a case management order addressing a schedule for discovery and dispositive motions issue and the Court will therefore deem these two Motions as moot.

8

Plaintiff Keys indicated at the February 21, 2011 Status Conference that his Motion to Suppress the Use of Depositions by Defendants (Doc. 129) was withdrawn, and the Court will deem it as such. Additionally, Plaintiff's Motion to Stay Depositions and Compel Legal Materials (Doc. 47) will be deemed moot as Plaintiff's deposition has already transpired.

## Conclusion

In accordance with the above, Plaintiff Carrington Keys's Motions to Compel Discovery (Docs. 41, 59, 100 and 127) will be granted in part. Plaintiff's Motions to Compel Interrogatories and Admissions (Docs. 71 and 138) will be granted to the extent they seek responses from the Corrections Defendants. However, no monetary sanctions will be awarded in any of the above motions.

In light of a forthcoming case management order, both parties' Motions to extend the discovery deadlines (Docs. 95 and 96) will be deemed moot. Finally, Plaintiff's Motion to Suppress the Use of Depositions by Defendants (Doc. 129) will be deemed withdrawn, and his Motion to Stay Depositions and Compel Legal Materials (Doc. 47) will be deemed moot.

An appropriate order follows.


 February 22, 2012                           /s/ A. Richard Caputo
 Date                                        A. Richard Caputo
                                             United States District Judge