**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CARRINGTON ALAN KEYS, | |
| Plaintiff, | NO. 3:10-CV-1570 |
| v. | (JUDGE CAPUTO) |
| DISTRICT ATTORNEY JACQUELINE M. CARROLL, et al., | |
| Defendant. | |

## **MEMORANDUM**

Presently before the Court is Plaintiff Carrington Keys's Motion to Alter or Amend the Court's February 22, 2012 Order. (Doc. 167.) Keys objects to three of the Court's February 22, 2012 discovery rulings, and claims that they improperly prevent him from establishing unconstitutional prison policies or practices at State Correctional Institution–Dallas. Since the Court did not appropriately consider supervisory liability in the earlier Order, Keys's Motion will be granted in part. Keys will be afforded additional discovery as to prior reports made against the Corrections Defendants for the specific systemic harms Keys alleges they oversaw: physical abuse for the filing of grievances.

## **BACKGROUND**

At all relevant times, Plaintiff Carrington Alan Keys was an inmate at the State Correctional Institution in Dallas, Pennsylvania. He filed his initial Complaint in the Luzerne County Court of Common Pleas against various prison officials pursuant to 42 U.S.C. § 1983, alleging, inter alia, assault, mail tampering, retaliation, and failure to prosecute. The Defendants removed the action to the Middle District of Pennsylvania. (Doc. 1.) Defendants to this lawsuit include: Jeffrey Beard, Secretary of the Department of

Corrections; Michael Klopotoski, the regional deputy secretary for the Department of Corrections; Superintendent Jerome Walsh of SCI-Dallas; Deputy Superintendent Vincent Mooney of SCI-Dallas; Joseph Zakkaranuskas, Robert McCoy, Lawrence Publosky, Elmore Angelope and Nancy Fedor, all corrections officers at SCI-Dallas ("Correctional Defendants"); Jacqueline Musto Carroll, the former District Attorney for Luzerne County; and the Luzerne County District Attorney's Office.

Keys claims that he conveyed information to DA Carroll alleging involvement of the Correctional Defendants in the suicide of a fellow inmate. Plaintiff further alleges that, instead of investigating and/or prosecuting the Correctional Defendants, Defendant Carroll forwarded Plaintiff's complaint to prison officials, who then retaliated against Plaintiff through assault, harassment, and deprivation of mail.

In a February 22, 2012 Memorandum and Order, I ruled on a host of discovery issues outstanding between these parties. *Keys v. Carroll*, 3:10-CV-1570, 2012 WL 580419 (M.D. Pa. Feb. 22, 2012). Thereafter, Keys filed a timely Motion to Alter or Amend on March 2, 2012 as to three of these rulings. Keys's Motion is now ripe for the Court's review.

## **LEGAL STANDARD**

Keys styles his Motion as one "to alter or amend judges [sic] order" and in his reply brief argues that it should be evaluated pursuant to Federal Rules of Civil Procedure Rule 59(e) ("Motion to Alter or Amend a Judgment") or Rule 60(b)(6) ("Relief from a Final Judgment, Order, or Proceeding"). "Although motions for reconsideration under Federal Rules of Civil Procedure 59(e) and 60(b) serve similar functions, each has a particular purpose." *United States v. Fiorelli*, 337 F.3d 282, 288 (3d Cir. 2003). Specifically, while Rule 60(b) "provides six bases for reconsideration, including 'mistake, inadvertence,

2

surprise, or excusable neglect,'" *Id.* (quoting Fed. R. Civ. P. 60(b)(1)), Rule 59(e) "is a 'device to relitigate the original issue' decided by the district court, and used to allege legal error." *Id.* (quoting *Smith v. Evans*, 853 F.2d 155, 158-59 (3d Cir. 1988)).

However, as the Court's February 22, 2012 Order was not a final order,[1] the Court construes Keys's Motion as a Motion for Reconsideration under Local Rule 7.10. This procedure is essentially the same as a motion to alter or amend judgment brought under Rule 59(e), except that it allows for reconsideration of any court order, and is not limited to the entry of judgment. *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, No. 3:06–CV–1105, 2011 WL 4916397 at *2 (M.D. Pa. Oct.17, 2011) (clarifying that the "difference between a motion for reconsideration under Local Rule 7.10 and a motion to alter or amend judgment under Rule 59(e) is that a motion for reconsideration under Local Rule may be filed in response to any order of the court, not solely after the entry of judgment."). Rule 60(b) is similarly limited to final orders and is inapplicable to the instant Motion. *Precisionir, Inc. v. Slawter*, 686 F. Supp. 2d 540, 542 (E.D. Pa. 2010) ("The language of the rule itself make [sic] clear that the rule only affords relief from a final order.").

The basis for a motion for reconsideration under Local Rule 7.10 is, however, essentially the same as that under Rule 59. *Arlington*, 2011 WL 4916397 at *2 (M.D. Pa. Oct. 17, 2011). The purpose of a motion for reconsideration is to correct manifest errors of

---

[1] "A final order is one that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 160 (3d Cir. 2004) (quoting *Welch v. Folsom*, 925 F.2d 666, 668 (3d Cir. 1991)). "Accordingly, 'there is no final order if claims remain unresolved and their resolution is to occur in the district court.'" *Penn W. Assocs. v. Cohen*, 371 F.3d 118, 125 (3d Cir. 2004) (quoting *Aluminum Co. of Amer. v. Beazer East, Inc.*, 124 F.3d 551, 557 (3d Cir. 1997)).

law or fact or to present newly discovered evidence. *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985). A judgment may be altered or amended if the party seeking reconsideration establishes at least one of the following: "(1) an intervening change in controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café, by Lou-Ann, Inc., v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999). "A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Ogden v. Keystone Residence*, 226 F. Supp.2d 588, 606 (M.D. Pa. 2002). "[R]econsideration motions may not be used to raise new arguments or present evidence that could have been raised prior to the entry of judgment." *Hill v. Tammac Corp.*, Civ. A. No. 05-1148, 2006 WL 529044, at *2 (M.D. Pa. Mar. 3, 2006). Lastly, the reconsideration of a judgment is an extraordinary remedy, and should be granted sparingly. *D'Angio v. Borough of Nescopeck*, 56 F. Supp.2d 502, 504 (M.D. Pa. 1999).

## DISCUSSION

In my February 22, 2012 Memorandum, I held that some of the discovery sought by Keys was not relevant to any unconstitutional acts performed on him, but was instead aimed at establishing a larger unconstitutional policy or custom under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).[2] However, since sovereign immunity precludes a

---

[2]Under *Monell*, "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v.*

4

*Monell* claim against Pennsylvania's Department of Corrections ("DOC") or a State Correctional Institution, I granted Keys's discovery requests only insofar as they sought materials directly relevant to his individual retaliation claims. Today, Keys argues that this ruling was in error as it did not adequately consider individual supervisory liability. Specifically, Keys alleges the Corrections Defendants in a supervisory capacity at SCI-Dallas had knowledge of and acquiesced to the unconstitutional acts he complains of.

To establish individual liability in a § 1983 case, a plaintiff must show that the defendant had "personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988). Where a supervisor[2] did not directly participate in violating a plaintiff's rights, he may still be liable under § 1983 where he "directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir.2004). A supervisor may also be liable under § 1983 "if he or she implements a policy or practice that creates an unreasonable risk of a constitutional violation on the part of the subordinate and the supervisor's failure to change the policy or employ corrective practices is a cause of this unconstitutional conduct." *Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 72 (3d Cir. 2011) (citing *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir.2001)). A supervisor cannot be held liable, however, on a theory of respondeat superior. *Rode*, 845

---

*Department of Social Services*, 436 U.S. 658, 690 (1978).

[2]Based on the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Third Circuit has "expressed uncertainty as to the viability and scope of supervisory liability." *Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 70 (3d Cir. 2011) (internal citations omitted). For the purposes of this opinion, however, the continued validity of imposing liability on a supervisor will be assumed.

F.2d at 1207.

In his Amended Complaint, Keys alleges that "Defendants Beard, Klopotoski, Mooney and Zakarauskas had the responsibility and authority to establish policy for SCI Dallas" and that they, along with Defendant Walsh, "were deliberately indifferent in training of prison personnel in regard to the lawful constitutional policies, procedures, and protocols" and "knew or were deliberately indifferent to knowing that unconstitutional policies, practices and customs were in place, or failed to establish and implement appropriate policies, procedures and protocols for ensuring safety and security of R.H.U. inmates at the prison." (Am. Compl. at ¶¶ 28-29, Doc. 125.)  As such, Keys alleges that the Court's failure to grant in full the following three discovery requests constitutes a clear error of law: (1) all grievances filed against the Correctional Defendants, the action taken, responses, etc. from the years 2008 through 2010; (2) all grievances filed in the restricted housing unit at SCI Dallas from years 2009 to the present; and (3) any and all abuse reports, letters, and complaints filed against the correctional defendants from years 2007 to 2010. (Pl.'s Br. at 3, Doc. 168.)

The first and third contested requests, seeking essentially all grievances, abuse reports, letters and complaints filed against the Correctional Defendants, were granted to the extent any such documents pertained specifically to Plaintiff Carrington Keys. (Feb. 22, 2012 Order at 5-6, Doc. 165.)  Upon further review, this determination was too narrow in light of Keys's specific allegations of supervisor liability. *See e.g. Cox v. McClellan*, 174 F.R.D. 32, 34 (W.D.N.Y. 1997) (holding discoverable prior excessive force complaints made against the defendant officers where there was a claim that the supervisor defendants had failed to adequately supervise).  Therefore, Keys will be entitled to discover grievances

made as against the Corrections Defendants[3] to the extent they specifically allege the essence of his claim–physical retaliation "against prisoners who utilize the grievance system or exercise the right to petition the government for redress of grievances." (Am. Compl. at ¶ 25, Doc. 125.)

The second contested request, seeking all grievances filed in the restricted housing unit from 2009 to the present, was deemed overbroad with "little probative value to the claims at issue in this case." (Feb. 22, 2012 Order at 5, Doc. 165.) This determination was not in clear error and it will not be disturbed. Providing Keys with every single inmate grievance–whether pertaining to mold, mice, or meals–is exceedingly broad and is not "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Moreover, this request would create unreasonably cumulative discovery in light of the above determination that further discovery is warranted on grievances pertaining to the specific issues involved in this matter. Fed. R. Civ. P. 26(b)(2)(C) ("courts must limit the . . . extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the discovery sought is unreasonably cumulative or duplicative"). Therefore, Keys's Motion to Reconsider on the restrictive housing unit grievances will be denied.

---

[3]Of course, these documents may need to be redacted to protect the privacy of third parties not named in this action. *See e.g. Solan v. Ranck*, Civil No. 1:CV-06-0049, 2007 WL 763073 at *4 (M.D. Pa. Mar. 08, 2007) (finding a list of inmates also supposedly exposed to retaliatory treatment was relevant to the plaintiff's claims and that redaction could sufficiently protect the privacy interests of these other inmates).

**CONCLUSION**

Upon review of Plaintiff Keys's claims of supervisory liability, Keys's Motion for Reconsideration will be granted insofar as he will be allowed to take discovery of reports and grievances complaining that the Corrections Defendants retaliated against other parties for exercising their right to petition for redress of grievances. Keys's Motion will be denied in all other respects. An appropriate order follows.


| April 10, 2012 | /s/ A. Richard Caputo |
|---|---|
| Date | A. Richard Caputo |
| | United States District Judge |